## SERVICE OF SUMMONS ON CORPORATIONS.

Circuit Court of Lucas County.

THE STATE OF OHIO, ON RELATION OF LYMAN W. WACHENHEIMER, PROSECUTING ATTORNEY, v. THE STANDARD OIL COMPANY OF OHIO ET AL.

Decided, October 5, 1907.

*Summons—Served in Quo Warranto as in Civil Actions—When an Alias Summons May Be Issued—Service on Agent—Recital in Return—Service on Railway Companies—Sections 5040 and 5041, Revised Statutes.*

1. A party upon whose pleading summons has been issued is not required, upon discovery that good service has not been made, to wait until the original summons has been returned "not summoned," or some action has been taken by the court, before causing an alias summons to issue, but may proceed at once to secure service upon another writ within the life of the original summons.

2. Where a summons is returned by the sheriff as having been served on A, "managing agent of said company in Lucas county," and this is met by an affidavit by the vice-president of the defendant company, in which he states that A is not and never has been its manag-

ing agent, but is an agent in charge of a local station, and nothing is presented in support of the truth of the recital in the return of the sheriff, a court will rely on the affidavit and grant a motion to quash the service.

3. A return which recites that summons was served on B, "assistant cashier and treasurer of the company," is also open to a motion to quash, where met by an affidavit by B which removes the uncertainty as to whether he is the treasurer of the defendant company by stating explicitly that he is the "assistant cashier and assistant treasurer," and the return fails to show absence from the county of all the chief officers and other officers named in the statute upon whom service may be made, or that the summons was left with B at the usual place of business of the defendant company, he being the person in charge thereof.

4. Service may be made in quo warranto precisely as in other civil actions; and where the defendant is a railway company, service may be had upon a ticket or freight agent of the company, notwithstanding the principal office and principal officers of the company may be within the county at the time service is made.

*L. W. Wachenheimer*, Prosecuting Attorney, *Frank Monnett* and *Hal De Ran*, for plaintiff.

*Kline, Tolles & Goff, Wheeler & Bentley, Doyle & Lewis, J. O. Troup and Marshall & Fraser*, contra.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This is a proceeding in quo warranto, brought by the relator against some fourteen or fifteen different corporations. It is charged in the petition, at great length and with great particularity, that these corporations have combined together to violate and have violated certain provisions of the so-called Valentine anti-trust law, and the prayer of the petition is: "that defendants be adjudged to have forfeited and surrendered their respective corporate rights, privileges, powers and franchises and that they and each of them be ousted and excluded therefrom," etc. Certain of these corporations are foreign corporations, and with respect to them the prayer is that they be denied the right and prohibited from doing any business in the state of Ohio and county of Lucas. The matter that we have to consider and pass

upon now is certain motions filed by certain of the defendants to quash service of summons upon them. As to some of the defendants, there has been no attempt to serve them, and as to others of the defendants they have been dismissed from the case. The motions are with respect to the service upon the Standard Oil Company of Ohio, the Northwestern Ohio Natural Gas Company, the Toledo & Ohio Central Railroad Company, the Lake Shore & Michigan Southern Railway Company, Pennsylvania Railway Company and the Hocking Valley Railway Company.

I shall speak first of the motion on behalf of the Standard Oil Company of Ohio. On behalf of this defendant, the motion is not only to quash the service of an alias summons, but to quash the alias summons on the ground that it was issued without authority of law. The first summons against this defendant was directed to the sheriff of Allen county, Ohio; and the return by the sheriff is to the effect that he served it by delivering a copy to "a representative of said company." Manifestly, this was not a good service. Upon this return coming to the attention of counsel for the plaintiff, a precipe was filed for an alias summons, which was issued to the sheriff of Lucas county. It is urged upon the authority of the case of *Whitman* v. *Sheets*, 20 Circuit Court Rep., 1, that the issuing of the alias summons was unauthorized. Our attention is directed particularly to Section 5040 of the Revised Statutes, which provides: "When a writ is returned 'not summoned,' other writs may be issued, until the defendant is summoned," etc. And it is urged, that since this matter of the issuing and service of summons is all a matter of statutory provision and authority, and there is no other authority than that found here for the issuing of alias summonses, that therefore an alias summons is not authorized until after the original summons has been returned, "not summoned." Even the case of *Whitman* v. *Sheets* would not quite sustain that extreme view, for the reason that it is there held that after the court has decided that the service is not good, an alias summons may issue although there is no return upon the original summons of "not summoned."

In the case of *Whitman* v. *Sheets, supra,* the case of *Williams'*
*Admr.* v. *Welton's Admr.,* 28 O. S., 451, appears to have been
entirely overlooked. In that case service of an alias summons
was made upon Mrs. Williams. The claim was made that the
writ was void because issued and served within the life of another
alias writ of an earlier date. Attention was called to this same pro-
vision of the code upon the subject of issuing alias writs. It
was then found in Section 60 of the code. I read from the
opinion, at page 470:

"It is argued that all process is the creature of the statute, and
as there is no provision for issuing one writ before the other is
returned, when directed to the same county, and as provision is
made for more than one writ when the defendants reside in
different counties, the maxim '*expressio unius exclusio alterius*'
applies.

"If this maxim is to govern in construing statutes relating to
incidental remedies in all cases, it would lead us back to the
era of technicality from which the code was intended to relieve
the practice.

"No better illustration of this can be found than to apply
this maxim to this section of the code. It provides for alias
writs only when a writ is returned 'not summoned.' Therefore,
if it is never returned, or is lost or destroyed, or filed without
any return, no other writ can be issued, for 'the expression of
one thing is the exclusion of another,' and as provision is made
for other writs in a given case, it excludes the power to issue
in all other cases not expressed."

The court, while recognizing this maxim as being one of great
value, held that it was not applicable to the case in hand, and
the service was sustained. We are not satisfied at all with the
reasoning or conclusions of the circuit court of the third circuit
in the case of *Whitman* v. *Sheets, supra,* a decision by a divided
court, Judge Day dissenting. We think the reasoning and the
principles applied in *Williams' Admr.* v. *Welton's Admr., supra,*
apply to the case we have under consideration—that an alias
summons might lawfully issue under circumstances like those I
have mentioned; that when a party discovers that good service
has not been made, he is not required to await the action of some

court before he may proceed to correct this defect. If he were required to do so, it might well result, as we can all readily see, in very great inconvenience and loss, especially where the court to which the party must apply is not in session. We think that this should be so especially in a case where the service is attacked by the other party, so that the party attempting to procure service is apprised of the fact that there will be no acquiescence in the defective service, but that the defendant will stand upon his rights.

As I have said, the motion on behalf of the Standard Oil Company of Ohio is, not only to quash this alias summons, but to quash the service. We come now to a consideration of the question of the service of the alias summons. The return itself sets forth that it was served by the delivery of a copy to H. A. Anderson, managing agent of said company in Lucas county. In support of the motion to quash we have presented to us the affidavit of M. F. B. Squire, as follows:

"F. B. Squire, being duly sworn, says that he is the vice-president of the Standard Oil Company of Ohio. Said corporation is a corporation organized under the laws of the state of Ohio and is located and has its principal place of business in the city of Cleveland, county of Cuyahoga and state of Ohio. And that at its said office in the city of Cleveland, can, and could at the time of the issuing and pretended service of said summons, be found its vice-president, secretary and treasurer.
"That H. A. Anderson named in the return of said summons was not at the time of said pretended service or at any other time the managing agent of said corporation, but was an agent of said corporation in charge of the local station of said corporation at Toledo, Ohio. (Signed) F. B. Squire."

It is urged on behalf of the plaintiff that we should not give weight or consideration to this affidavit, for the reason that it does not state the facts which would disclose whether Mr. Anderson was a managing agent or not; it is said that the statement that he was not managing agent is a mere conclusion. The same may be said of the return of the sheriff. The sheriff states boldly that he served this writ upon H. A. Anderson, who was

the managing agent.   This affidavit traverses that return, and we think, coming from the vice-president of the company, who must know whether Anderson was or was not a managing agent, it should be considered, together with the fact that there is nothing here supporting the return of the sheriff—and it is not made under oath, but is something made, unquestionably, upon information in the nature of hearsay, that the sheriff relied upon and supposed to be true—we think that under those circumstances this affidavit should be regarded as refuting and overturning the statement of the sheriff to the effect that this man was a managing agent.   In addition to this, the affidavit sets forth that the principal office and place of business of this defendant is in the city of Cleveland.   Mr. Anderson was served by the sheriff here, in this county, and the affidavit sets forth that what the corporation has in this county is a local station, and that Mr. Anderson is in charge of the local station.   These statements we think constitute primary facts which tend to support the general statement that Mr. Anderson was not the managing agent of the company.   The affidavit, in short, is to our minds persuasive and we think reliable information to the effect that Anderson was not managing agent, and, therefore, we ought to rely upon it, and we do rely upon it, and therefore the service of the alias summons upon this defendant will be quashed.

We come now to a consideration of the service upon the Northwestern Ohio Natural Gas Company.   This summons was issued to and was served by the sheriff of Lucas county.   The return sets forth that it was served by delivery of a copy thereof to one R. J. Burkhalter, "assistant cashier and treasurer of said company."   Counsel for the relator rely upon Section 5401 of the Revised Statutes, contending that that is the section which provided for service upon corporations in cases of this character.   That section provides that, under certain circumstances, service may be had upon the cashier or treasurer of a corporation; it nowhere provides for service upon an assistant cashier or assistant treasurer.   This return, reading that the service was upon an "assistant cashier and treasurer," it might

be thought that the word "assistant" qualified to word "cashier" only and not the word "treasurer." It might be said that the return is not clear, but is ambiguous, but upon that subject we have the affidavit of Mr. Burkhalter himself, in which he says under oath "that he is now and has been for the year last past the assistant secretary and assistant treasurer of the Northwestern Ohio Natural Gas Company. He was never treasurer of said company. At the time of the service of summons in this case on affiant, M. B. Baly (which we think should be M. B. Daly) "was a vice-president of said company, and J. W. McMahon, superintendent, both residing in Toledo from April 28th to May 7th inclusive."

The material part of this affidavit is that in which it states that Burkhalter was never treasurer of the company; so that the service upon him was not authorized, unless the return should show the absence from the county of all the chief officers and other officers named in the statute upon whom service might be made; and unless it should further show that the summons was left at the usual place of business with Mr. Burkhalter, he being the person in charge thereof. The return does not pretend to state anything of that kind. Upon this showing, we believe that we are bound to and we do quash the service of summons upon the Northwestern Ohio Natural Gas Company.

We come now to a consideration of the service upon the railroad companies—the Toledo & Ohio Central Railway Company, the Lake Shore & Michigan Southern Railway Company, the Pennsylvania Company and the Hocking Valley Railway Company. In some respects they are not precisely in the same class, but, for the present I shall deal with them as if they were; they are railway companies; the differences seem to be that the Toledo & Ohio Central Railway Company, an Ohio corporation, has its chief offices in this county, and the Pennsylvania Company is a foreign corporation, whereas the Lake Shore & Michigan Southern Railway Company and the Hocking Valley are Ohio corporations, but the Lake Shore & Michigan Southern and the Hocking Valley have their principal offices elsewhere—the

first in Cleveland and the second in Columbus, Ohio. As I have said, counsel for the relator contend that service should be made as provided in the Code of Civil Procedure, or, specifically, as provided in Section 5041 of the Revised Statutes. In the cases of all these railroads, the return sets forth that service was made upon "a regular freight agent of said company; the president or other chief officers of said company could not be found by me in Lucas county, Ohio." With respect to the Lake Shore & Michigan Southern Railway Company, there is on file an affidavit that stands unquestioned, that the chief offices of said company are in Cleveland, and that service might have been made upon the chief officers there; and the same is true of the Hocking Valley Railway Company, only its chief office and situs is in Columbus; and with respect to the Toledo & Ohio Central Railway Company, the fact that service could not be made upon its chief officers in Lucas county, is controverted by an affidavit.

If, however, service may be made under Section 5041, we are of the opinion that the return need not show that the chief officers could not be served. We think the statute provides for two methods of service upon railroad corporations, to-wit, it provides in the first part of the Section (5041) for a service upon corporations generally, in which case the return must show the absence of the superior officers, if the service is upon an inferior. But, following that provision, is this:

*   *   *   "and if such corporation is a railroad company, whether foreign or created under the laws of this state, and whether the charter thereof prescribes the manner and place, or either, of service of process thereon, the summons may be served upon any regular ticket or freight agent thereof; or if there is no such agent, then upon any conductor, in any county in this state in which such railroad is located, or through which it passes."

And we think that under that provision service may be made upon such ticket or freight agent notwithstanding the presence in the same county of the superior officers of the company; we think that is the plain meaning of the statute.

It was said, in the course of the argument, that we had decided differently in a certain case, which was heard some time ago and which counsel have since given us reference to, the case of *Jones* v. *T. & O. C. Ry. Co.*, 20 Circuit Court Rep., 63. That is the only case of which we have any recollection bearing upon this question. This was a decision under Section 6478, applicable to proceedings against railway companies before a justice of the peace, and had no application to the case under consideration. Counsel still think there is some other decision bearing upon the subject, but of that we have no recollection and counsel have not been able to find it.

It is argued by counsel for these defendants that service in quo warranto cases is to be made—or the return of service—is to be made somewhat differently from that in ordinary civil cases. The discussion has taken a wide range and we are satisfied that we can not do justice to the arguments of counsel upon this claim. Much of it seems to be applicable rather to the question as to whether the suit is properly brought in this county against certain of these companies. It seems to us, however, to bear upon the question of the method of service and of the return. That a suit may be brought in this county, under circumstances like those set forth in the petition, seems to be distinctly held in the case of *Ohio, ex rel Ellis,* v. *King Bridge Co. et al,* 7 C.C.(N.S.), 557. It is urged, however, that if the suit may be brought in this county, the summons nevertheless must be served upon the defendant corporations in the counties where they have their principal offices respectively—the situs of the corporations. We are referred to the rules laid down in 5th Ohio, at page 250, and then to the statutory modification of the laws thereafter made in 1838, and also to the later codification in 1878, and from the provisions found in these codes and in these rules of the court and in certain other statutes respecting the duties of prosecuting attorneys and the attorney-general, in quo warranto cases, counsel deduce the conclusion that the service must be made as I have stated, upon the defendants in the counties where they have their main offices. I shall not undertake to refer to all of these stat-

utes, nor to follow the reasoning of counsel on this line. It seems to us entirely clear that the rules laid down by the Supreme Court in 5th Ohio were abrogated and superseded by the provisions in the code of 1838—found in 2 Swan & Critchfield, beginning at page 1264, on the subject of service of summons in quo warranto cases. Section 2 thereof provided:

"Whenever any such information shall be filed, a summons shall be issued thereon, which shall be served and returned forthwith; and whenever the same shall be returned served, the clerk of the court shall enter the defendant's appearance."

Then Sections 10, 11 and 12 contain specific provisions as to the issuing and service of summons in quo warranto cases; and these provisions differ somewhat—in some instances very widely —from the methods of service in ordinary civil actions. With respect to the place where the action might be prosecuted against a corporation, Section 9 provided that:

"Leave to file such information may be granted by the Supreme Court, in term time, or any judge thereof in vacation, upon the application of the prosecuting attorney of the county wherein the principal office or place of business of such corporation shall be," etc.

Again, when the Legislature came to codify the laws in 1878, or to "Revise and Consolidate" as the act reads, by a statute found in Vol. 75, Ohio Laws, at page 597, the statute on the subject of quo warranto was brought into and made a civil action under the code, and it was therein provided, in Section 11:

"When the petition is filed without leave and notice, a summons shall issue, and be served as in other cases," etc.

We think that it is entirely clear that that means in other civil cases, and that the purpose of the statute was to provide for service being made in quo warranto cases the same as in other civil cases, to harmonize the law on the subject of service and to not have different methods of service in different forms of action. By this statute that of 1838 was repealed, and all of those

special provisions contained in the statute of 1838 were wiped out, and we do not think this could have the effect of restoring any more ancient practice in any respect or degree. This statute further provides—differing, it will be observed, in some respects from the statute of 1838—that an action may be brought against a corporation in a county where the corporation has *a* place of business. This provision is in Section 6768. Formerly it provided that an action must be brought in the county where the principal office or place of business of such corporation shall be. That may not bear very directly upon the question of the service of summons, however. If the action was properly brought in this county, as held in the case of *Ohio, ex rel,* v. *King Bridge Co., supra,* we think the summons may issue and be served precisely as in other civil cases, and, as I have said, we are of the opinion that the service may be made upon a ticket or a freight agent of a railroad company, though the principal office of the company and the principal officers of the company may be within the county at the time such service is made. We have nothing to say about the wisdom of such law, about the policy of the Legislature in adopting it, but that seems to be the plain provision of the statute as we understand it; and, entertaining these views, the motion to quash, as to the railroad companies, will be overruled.